## O'BRIEN v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   January 10, 1899.)

1. DAMAGES—PERSONAL INJURIES—EVIDENCE.
   A year after injuries causing a miscarriage, for which suit was brought by a passenger on a street car, she underwent a surgical operation for the removal of a child with which she was then pregnant. *Held*, that a description by a physician of plaintiff's condition just before the trial was proper, where he stated that the operation had no effect on her condition when she was examined.

2. HYPOTHETICAL QUESTIONS.
   When plaintiff was about to alight from defendant's street car, it started forward, and the conductor took hold of her. She testified that: "When the car stopped, the conductor let go of me when he found out I was on solid ground. I got on the ground with a sudden start. I struck right on my feet. I did not fall." She had a miscarriage a few days after the occurrence. *Held*, that it was error to permit a hypothetical question to a physician as to whether plaintiff's condition could be due to her act of landing on her feet in the street "with a shock."

Appeal from trial term, Kings county.

Action by Mary O'Brien against the Brooklyn Heights Railroad Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

John L. Wells, for appellant.
S. S. Whitehouse, for respondent.

WILLARD BARTLETT, J. Upon the trial of this case the plaintiff, a married woman, recovered a verdict of $3,500 damages against the defendant on account of injuries which she claims to have sustained by reason of the negligence of the defendant's servants and agents in their operation of a trolley car on Flatbush avenue, in the borough of Brooklyn, upon which she was a passenger, on the 23d day of January, 1897. The complaint alleged that while the plaintiff was attempting to alight from the car, it was caused to start suddenly forward with a violent jerk, in consequence of which the plaintiff was strained, and was caused to give premature birth to a child with which she was then pregnant. There was no testimony as to the circumstances of the accident except that of the plaintiff herself. The defendant offered proof to the effect that no report of any such accident had ever been made to its officers. After giving her account of how it happened (to which I shall presently refer again), the plaintiff testified that she

suffered a miscarriage eight days later; and she also introduced medical opinion evidence tending to show that the miscarriage could have resulted from the strain attributed to the forward movement of the car, and a shock which the hypothetical question assumed that she sustained when alighting therefrom. Against the objection and exception of the defendant, the plaintiff was also allowed to prove that in January, 1898, about a year after the alleged accident, she underwent a surgical operation for the removal of a child with which she was then pregnant. The subsequent proof, however, utterly failed to show any causal connection between the accident and this operation; and the trial judge, upon the motion of counsel for the defendant, very properly struck out all the testimony relating to it, and instructed the jury that they were not to consider it at all if they came to the question of damages. It is now insisted in behalf of the defendant that the court should have gone still further, and should have stricken out the testimony of Florence G. Emerson, a physician, who testified in behalf of the plaintiff as to her physical condition a short time before the trial, and who expressed the opinion, in answer to the hypothetical question already mentioned, that such condition was due to the accident. The argument is that the statements of Dr. Emerson describing the plaintiff's condition just prior to the trial should have been excluded from the consideration of the jury after the evidence as to the operation in January, 1898, had been stricken out, because that condition must have been caused in part by that operation. A careful reading of the testimony of Dr. Emerson, however, shows that the doctor thought that the operation had no effect upon the condition of the plaintiff when her examination was made. Under these circumstances it was not error to allow her testimony to stand.

Recurring, however, to the plaintiff's own narrative of the accident, it will be found that the claim of negligence rests on a very narrow basis indeed. The car had stopped at a transfer station where the plaintiff desired to alight. She started to do so, and had one foot on the step of the car, and "the other one trying to catch the ground," as she describes it, when the car moved on. The conductor then rang the bell for the car to stop, and held onto the plaintiff's coat sleeve, thereby preventing her from being thrown on the ground. The plaintiff had her little child with her, on her right arm, and held on to the car railing next to the body of the car with her left hand; her body being half bent over. While the car was moving, she says, "I had hold of the baby with one arm, and my body was kind of pitched over on the side, just as if I was going to fall, only it was the conductor's support that kept me up." The car then came to a standstill. "When the car stopped," says the plaintiff, "the conductor let go of me when he found out I was solid on the ground. I got on the ground with a sudden start. I struck right on my feet. I did not fall." The car was perfectly still when the plaintiff stepped off, the conductor holding her tight, so that she could not fall. She stepped down first with her right foot, and then with her left, and did not slip or stumble or fall. She says that she strained her left side while the car was moving, and that she felt very nervous and trembling after she left it.

The only fact upon which any negligence on the part of the railroad company can be predicated is the starting of the car after the plaintiff reached the step on her way to alight, resulting, as she says, in straining her side. The complaint does not suggest, nor does the evidence justify the inference, that she suffered any shock in stepping to the ground. Indeed, the plaintiff in this case had to be called to the stand a second time before she testified to anything even indicating that the impact between her feet and the street was at all severe. Her first statement was that she got on the ground with a sudden start. When recalled, she said that she got off with a sudden jar, and had to come down on her feet. Taking all her testimony together, it appears to me to be perfectly plain that in alighting she experienced nothing which can properly be regarded as a shock, or a physical injury in any sense of the term; but that the movement which she made, and the contact of her feet with the ground, involved no more violence than is commonly experienced and ordinarily to be expected in the everyday occupations of life. If the defendant is chargeable with any negligence whatever, therefore, on account of the occurrence narrated by the plaintiff, it is because the motorman carelessly started the car so as to strain the plaintiff in the position where she stood while the car was moving. But the proof does not show that the miscarriage and other injuries of which she complains are the results of the strain to which her side was thus subjected. When Dr. Emerson testified that she considered the plaintiff's present condition to be due to the accident, it was in answer to a hypothetical question which assumed that the plaintiff landed on her feet in the street with a shock. This question was objected to expressly on the ground that it was not a proper statement of the case, and, upon the objection being overruled, an exception was duly taken in behalf of the defendant. The ruling was erroneous, and requires a reversal of the judgment. It is going very much too far to infer from the plaintiff's testimony that she underwent any shock from stepping down to the pavement, even if she did put her feet down hard. After the car started, the conductor, according to her own story, appears to have exercised a praiseworthy degree of care to prevent the plaintiff from being hurt as she left the platform, for she says that he let go of her only when he found she was solid on the ground.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.